```
            IN THE UNITED STATES DISTRICT COURT FOR
           THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                 *
U.S. MERIT SYSTEMS PROTECTION
BOARD,                           *

     Petitioner,                 *

          v.                     *    CIVIL NO.: WDQ-07-1936

MELODY MCENTEE,                  *

     Respondent.                 *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

The U.S. Merit System Protection Board (the "Board") subpoenaed testimony and documents from Melody McEntee about a meeting she attended on September 6, 2006 with Dennis W. Rader, a Security Specialist with the Defense Security Service (the "DSS").[1]  McEntee filed a motion to quash the subpoena, which was denied by the Board.  The Board also dismissed McEntee's motion for reconsideration and referred the case to the Office of the General Counsel, which filed suit to enforce the subpoena.

Pending are McEntee's motion to dismiss the petition to enforce the subpoena, and the Board's motion to seal Exhibit 21 of its supplemental appendix.  For the following reasons, McEntee's motion to dismiss and the Board's motion to seal Exhibit 21 will be denied.

---

[1] An agency of the Department of Defense (the "DOD").

I.   Background

On September 6, 2006, Rader attended a breakfast meeting with Congressman C.A. "Dutch" Ruppersberger, McEntee (Ruppersberger's Director of Government, Business, and Community Relations), and Joseph F. Toher, Jr. (the registered agent for Cornerstone Engineering Associates).  At the meeting, Rader revealed a DSS proposal to improve the personnel security investigation process within the DOD.[2]

The DSS found Rader's handling of the DOD information to be improper and proposed a reduction in his grade.[3]  Rader argued that he had not realized that Congressman Ruppersberger would attend McEntee's meeting.  On December 13, 2006, DOD sent Rader a notice of its decision to reduce his grade and imposed a 14-day suspension.  On January 23, 2007, Rader appealed DOD's decison to the Board.

On February 20, 2007, DSS requested a deposition subpoena for testimony and documents from McEntee concerning the September

---

[2]  The plan was a draft and had not been presented to the DOD executives whose approval would be required to implement the plan.

[3] DSS charged Rader with violations of: standards of conduct by (1) providing nonpublic and pre-decision information, to a person who did not work for the federal government; (2) meeting with Toher, without authorization, to discuss nonpublic and pre-decisional official government matters; and (3) holding an unauthorized discussion with a member of Congress concerning official matters with significant public affairs implications, without prior approval.  *See* Board's Compl. Mem. at 3.

6, 2006 meeting.[4]  The Board issued the subpoena on February 23, 2007, and on March 13, 2007, McEntee moved to quash it, arguing that the information sought was privileged under the Speech and Debate Clause of the Constitution.  *See* U.S. Const. art. I, § 6, cl. 1.  On April 16, 2007, the Board denied McEntee's motion and ordered her to comply with the subpoena.[5]  DSS filed motions to enforce the subpoena on April 17 and 19, 2007, and on April 20, 2007, the Board denied McEntee's motion to reconsider denial of her motion to quash.  On April 24, 2007, the Board dismiss McEntee's appeal without prejudice and referred the case to its Office of the General Counsel to file suit for an order to enforce the subpoena.

II.  Analysis

    A.  Motion to Dismiss Subpoena

    1.  Standard of Review

The Board has the authority under 5 U.S.C. § 1204(b)(2)(A) to issue a subpoena requiring the attendance and testimony of any

---

[4] DSS claims that McEntee's deposition testimony is necessary to determine whether Rader knew that McEntee and Congressman Rupperberger planned to attend the meeting.  Board's Compl. Mem. at 12.

[5] McEntee was ordered to comply with the subpoena subject to the clarifications that: (1) any documents produced need disclose only "information relating to the arrangements for and logistics of the September 6, 2006 meeting"; and (2) deposition questioning is to be limited to "the arrangements for and logistics of the meeting, and shall not inquire into the intended or actual substance of any discussions at the meeting."  *See* Pet'rs App., 76-78.

3

individual or the production of documents or other evidence. 5 C.F.R. § 1201.81(a) (2006). The request must demonstrate that the evidence sought is relevant and that the scope of the request is reasonable. *Id.* § 1201.81(c). If the subpoenaed person refuses to comply, the Board may ask a district court to enforce the subpoena. *Id.* § 1201.85(a). The court must enforce the administrative subpoena "if the investigation is within the authority of the agency, the demand is not too indefinite or burdensome, and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *E.E.O.C. v. Ocean City Police Dep't*, 787 F.2d 955, 957 (4th Cir. 1986).

    2.   Speech and Debate Clause

McEntee contends that the Board's subpoena should not be enforced because the information sought is protected by the Speech and Debate Clause of the Constitution. The Board counters that the testimony it seeks merely concerns pre-meeting communications, which it argues is not protected.

The Speech and Debate Clause states that "for any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6. This provision was designed to preserve legislative independence and insure that Congress had "wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive

Branch." *Gravel v. United States*, 408 U.S. 606, 616, 617 (1972); *see also United States v. Brewster*, 408 U.S. 501, 508 (1972). Its primary purpose is to protect Members of Congress and congressional aides from inquiry that threatens the legislative process. *Gravel*, 408 U.S. at 616-17.

Although the Clause has been read "broadly to effectuate its purposes," *United States v. Johnson*, 383 U.S. 169, 180 (1966), it has limits. *Doe v. McMillan*, 412 U.S. 306, 313 (1973). The Court has been careful not to extend the privilege to include all things related to the legislative process. *Brewster*, 408 U.S. at 516. It protects only those legislative acts "generally done in Congress in relation to the business before it." *Id.* at 516. Matters other than actual speech and debate in either House "must be an integral part of the deliberative and communicative processes by which Members participate in committee or House proceedings," before they receive protection under the Clause. *Gravel*, 408 U.S. at 616. Thus, not all Member's or aide's regular duties are protected legislative activity. *Doe*, 412 U.S. at 313.

Relying on *Gravel* and *Johnson*, McEntee contends that preparations for specific activities--including meetings--are protected by the Speech and Debate Clause. McEntee argues that an information-gathering meeting, like the one that took place on September 6, entails advance preparation, and thus compelled

5

inquiry about such preparations could reveal protected information.

McEntee's reliance on *Gravel* and *Johnson* is misplaced. In *Gravel*, the Court held that a Senator's aide had no privilege against questioning by a grand jury about whether private publication of classified government documents violated federal law. 408 U.S. at 606. The Court also held that the grand jury could inquire about the alleged arrangement between the Senator and private publisher as long as it was not a legislative act, but that it was not entitled to question the aide concerning preparation for a subcommittee hearing. *Id.* at 627-29.

In *Johnson*, a former U.S. Congressman was convicted of conspiracy and violating the federal conflict of interest statute. 383 U.S. at 170. The Fourth Circuit vacated the conspiracy conviction, holding that the charge that Johnson had conspired to make a speech for compensation on the floor of the House of Representatives was barred by the Speech and Debate Clause. *Id.* The Supreme Court affirmed, holding that a prosecution dependent on inquiries as to motives underlying the making of a speech by the Congressman contravenes the Speech or Debate Clause of the Constitution. *Id.* at 185.

The preparatory information sought in *Gravel* and *Johnson* was quite different from what the Board seeks in this case. The testimony sought in *Gravel* and *Johnson* was directly related to

6

the performance of a legislative act, i.e., preparing a Congressman's speech and preparations for a subcommittee hearing. Moreover, those cases dealt with a Congressman's immunity from criminal prosecution for certain acts done before Congress, which implicates a different privilege than that asserted by McEntee. Although the information the Board seeks relates to McEntee's preparations for the meeting, the inquiry involves solely administrative acts, i.e., meeting arrangements and logistics. DSS is not inquiring into McEntee's substantive preparations for the meeting or the details of any discussions, as the Board has recognized that such information may be protected by the Speech and Debate Clause. However, meeting arrangements are only "casually or incidentally related to legislative affairs" and are not part of the legislative process itself. *Brewster*, 408 U.S. at 528. Accordingly, McEntee's motion to dismiss will be denied.

    B.   Motion to Seal Exhibit 21

The Board seeks to seal Exhibit 21, which consists of 25 pages of Toher's deposition testimony. There is a well-established common law right to inspect and copy judicial records and documents. *See Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597 (1978). If the public's right of access is outweighed by competing interests, however, the court may, in its discretion, seal those documents from the public's view. *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

The Board claims that the document should be sealed because it contains information about Toher's business activities and public disclosure could interfere with his rights under the Privacy Act.[6]  The Board also asserts that information about Toher, who is not a party to this litigation, has potential sensitivity.  McEntee counters that the motion should be denied because the Board has not satisfied the requirements of Local Rule 105.11 because it has failed to specify why such information should be sealed.

Local Rule 105.11 provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections.

The Board has not satisfied the requirements of Local Rule 105.11.  The Board's only justification for sealing the document is that "[it] has potential sensitivity" and "could interfere with Mr. Toher's personal privacy rights."  These justifications are neither specific nor factual.  Moreover, the Board does not indicate why alternatives to sealing would not provide sufficient protections.  Since the Board has failed to comply with Local Rule 105.11, its motion to seal will be denied.  The Board will have 15 days to renew its motion with a memorandum that complies

---

[6] 5 U.S.C. § 552a (2004).

8

with Rule 105.11.[7]

III. Conclusion

    For the above stated reasons, McEntee's motion to dismiss and the Board's motion to seal will be denied.


<u>December 13, 2007</u>                             <u>      /s/               </u>
Date                                          William D. Quarles, Jr.
                                             United States District Judge

---

    [7] McEntee also argues that disclosure is permissible under the Privacy Act. As the Board has failed to satisfy the requirements of Local Rule 105.11, an analysis under the Privacy Act is unnecessary.

9